By the Court, Talcott, J.
This was a suit in equity, commenced before the Code, by filing a bill and issuing a subpoena to answer, on the 38th day of June, 1848. The cause of action, and grounds of equitable jurisdiction, set up in the complaint, are founded upon certain *500 loose and obscure contracts between the parties, then all residents , of Rochester, growing out of an attempted speculation in pine lands, in the State of Maine, in the year 1835.. Assuming the truth of the complaint, the contracts relate to certain lands in that State, which none of the parties to the suit ever owned, but for which the defendants Reynolds, Kempshall & Samson held a bond for a conveyance, in the nature of an executory contract, made by Williams & Fuller of the State of Maine, who were, or assumed to be, the owners of the lands in question. This bond, Reynolds, Kempshall & Samson sold to Beach & Bush at a certain advance per acre, with an agreement on the .part of Reynolds and his associates to sell the same, or in case of failure • to sell the same to others, then to repurchase the same themselves at a further advance, within three months. The price to be paid Williams & Fuller for the lands was $45,000, of which $11,000 was to be paid down, and the balance to be paid or secured to be paid, in the manr ner specified in the condition of the bond, within six months. Beach & Bush, upon taking an assignment of this bond made the down payment to Williams & Fuller, and paid to Reynolds and his associates one-fourth of their profits, and executed to them an agreement to deliver satisfactory notes for the balance in three months. It is not alleged that Beach & Bush ever assumed any obligation to pay the balance of the purchase money to Williams & Fuller, or that they ever performed or offered to perform the agreement, as to giving satisfactory notes for the remaining three-fourths of the profit of Reynolds and his associates. It does not appear that any of the purchase money after the down payment, was ever paid to Williams & Fuller, and it is to be inferred from the statements of the complaint that the contract with Williams & Fuller was, within a few months, abandoned by all the Rochester parties, and suffered to become forfeited according to its terms. The *501 complaint states that Beach & Bush tendered to Reynolds and his associates a re-assignment of Williams & Fuller’s bond, in January, 1836, which was refused, but upon what ground does not appear. Bush is made a defendant upon the allegation that he refused to join in the complaint. The only ground upon which the jurisdiction of a court of equity seems to be claimed appears to be, in substance, that the conditions of the written bonds between the parties to the suit may be considered to be unintelligible, or not to express the real terms of the contract as agreed upon by parol; the complainant, however, insisting that they do “sufficiently express the terms of the said agreement,” but claiming, in case the court should think otherwise, that the condition of the bonds be reformed so as to,express the terms of the agreement.
As before stated, the bill was filed June 28, 1848. Reynolds, Samson and Bush appeared in the suit. Both Bush and Samson answered, but the purport of such answers does not appear. Reynolds never answered, and although his solicitors were served with a copy of the bill and notice of an order to answer, in December, 1848, no order pro confesso was ever entered against him, and no further steps appear to have been taken in the cause until the motion, on which this appeal arises, was made, in July, 1872, twenty-four years after any movement had been made in the cause, and thirty-seven years after the transaction upon which the complaint was based occurred, and after the bonds of which reformation was sought were executed. In the mean time, as was to have been expected, a majority of the parties to the transaction, together with the solicitors and counsel connected with the original suit, and probably most of those who had any actual knowledge of the transactions sought to be investigated, or of the suit itself, have died. Bbenezer S. Beach, the complainant, died in March, 1850, about fifteen months after he became entitled to *502 take the bill pro confesso against the defendant Reynolds, unless the suit had been settled or abandoned. He left a will by which he gave all his property to John D. and William Beach, appointing them his executors. They proved the will, and procured letters testamentary in May, 1850, more than twenty-two years before this motion to revive was made. One of these executors survived six and the other ten years after letters testamentary were issued to them, and neither attempted, in any manner, to revive or continue the controversy. The petition on which the motion to revive is founded, alleges that the executors of E. S. Beach left certain assets of their testator unadministered, and that the petitioner is a creditor of the estate of E. S. Beach by virtue of a judgment against the executors, assigned to him about fifteen years ago. And it appears that the petitioner, Henry B. Hewett, was appointed administrator with the will annexed of E. S. Beach, in June, 1873. The solicitor and counsel for the complainant are long since dead. The defendant Samson died in ¡November, 1857. The defendant Kempshail died in January, 1865. In opposition to the motion to revive the suit, the defendant Reynolds makes an affidavit that he is upwards' of eighty-six years old. That he has had several attacks of paralysis, and that by reason of his great age, and impaired health, his memory of past business transactions has become very imperfect. That not only two of his co-defendants, but two other gentlemen whom he names, both of whom were familiar with the transactions referred to in the complaint, and also Mr. Thompson who was his attorney in the suit, have died. That he understood from Thompson, in the lifetime of Beach, the complainant, that the suit against him was abandoned, and therefore paid no further attention to it. That he believes that Thompson had. some of the papers relating to the transaction. That he has instituted inquiries for the papers and for *503 Mr. Thompson’s law register, and that neither can be found. Upon this state of facts, the justice at Special Term has made an order that the suit be revived and continued in the name of the petitioner, Henry B. Hewett, as administrator with the will annexed of Ebenezer S.. Beach, against the surviving defendants, Reynolds & Bush, expressly stating, however, in the order, that the case is a proper one for the denial of the motion, if the court could exercise any such discretion; but granting the motion solely on the ground that the court has no discretion to deny it. From the terms of the order we understand that it was made upon the sole ground that the petitioner has an absolute right to such an order, and the court has not the legal power to deny it, for any cause whatever.
From this order the defendant Reynolds appeals.
The first question which presents itself on this appeal is, whether the justice at the Special Term was correct in the position that the petitioner had an absolute right to revive and continue the suit, so that the court could not legally deny his motion for that purpose.
The proposed supplemental complaint, accompanying the petition in this case, is what under the former practice of the court of chancery would have been a mere bill of revivor. It is founded simply on the death of the original plaintiff and the succession to his rights claimed by the petitioner Hewett, as administrator de bonis non, with the will annexed, and this death, and succession of interest is the only matter which has happened since the filing of the bill which the party claiming to have succeeded to the rights of the original complainant seeks to bring before the court. Such a bill, that is, a simple bill of revivor, might have been filed, under the former practice, without leave of the court. (Mitford's Eq. Pl. 69. 2 Barb. Ch. Pr. 35. 3 Paige, 206.) What was known under the former practice as a supplemental bill, was a bill designed to bring *504 before the court facts which had occurred, or at least been discovered, since the filing of the original bill, and affecting the rights of the parties, or the subject of the controversy, or to add parties, or to remedy a defect in the prayer of the original bill. (Hoff. Ch. Pr. 393.) A supplemental bill could not be filed without leave of the court. Sometimes a bill was filed, partaking of the character of both a mere bill of revivor and a supplemental bill, which was called a bill of revivor and supplement ; and in this case also, leave of the court was necessary before the bill could be filed. A bill of revivor was filed of course and without leave, but its effect was not, of itself, to revive the suit.
The prayer of the bill of revivor was that the suit be revived, and this relief was denied or granted, by the court, upon the hearing on the bill of revivor. To the bill of revivor the defendant might interpose a demurrer, answer or plea founded upon objections to the bill of revivor itself. So that, in fact, the bill of revivor was nothing more, in effect, than a more formal petition for leave to revive and continue the suit, to which the defendant might object in the more formal manner of demurrer or plea, instead of by affidavit merely.
A consideration of this feature of the former practice, throws some light upon the. proper construction of the 121st section of the Code. The section is in substance as fpllows: “No action shall abate by the death,” &c., “of a party, ” &c., “if the cause of action survive or continue. ” “In case of death, ’ ’ &c., “ of a party, the court on motion, at any time within one year thereafter, or afterwards, on a supplemental complaint, may allow the action to be continued by or against his representative or successor in interest.” As originally adopted, the section only provided for the continuance by motion, to be made within a year. The words “or afterwards on a supplemental complaint,” were added in 1849. Under this section the General Term of the first district *505 in Bornsdorff v. Lord, (41 Barb. 211; S. C. 17 Abb.169,) and afterwards in Roach, v. La Farge, (43 Barb. 616 ; S. C. 19 Abb. 67,) held that no motion for leave to file a supplemental complaint, after the expiration of the year, was necessary, but that it could be filed of course, and they therefore, in each case, upon this ground, affirmed the order denying a motion for leave to file a supplemental complaint. In each of those cases the prevailing opinion was written by Justice Barnard, and concurred in by Justice Sutherland, only. In the first case, Justice Gierke, and in the second, J ustice Leonard dissented, each delivering an opinion in opposition to the doctrine maintained by the then majority. So that, in fact, the dissenting opinions at the General Term of the first district, on this point, are numerically equal to those which maintain the point decided in those cases. Mr. Justice Leonard dissented, in Roach v. La Farge, upon the ground that the Code had introduced the former practice in regard to supplemental bills. The case of Allen v. Walter, in the New York common pleas, (10 Abb. 379,) which was also cited by the respondent as an authority for the position that no motion for leave to file a supplemental bill was nec'essary, holds, as we understand it, the contrary doctrine. Mr. Justice Brady, in an elaborate opinion delivered in that case, .maintains the view that section 121 of the Code was designed to embody the practice in equity, and abolish bills of revivor, and revivor and supplement, in all cases to which its provisions apply, and adopt the practice on supplemental bills; and in this case the court affirmed the order giving leave to file the supplemental complaint, as a proper exercise of the discretion of the court. (See also the case of Greene v. Bates, 7 How. Pr. 296.)
This seems to us entirely clear from the language of the section itself, taken in connection with the rules of practice in equity, which had previously existed, and with which the framers of the Code were entirely fami *506 liar. The distinction which had formerly existed between a supplemental bill and a bill of revivor and supplement, and a bill of revivor pure and simple, seems to have been without much foundation in reason, since in each case the leave and decision of the court was necessary to the attainment of the object. Though the question on a bill of revivor, pure and simple, was less a matter of discretion than in the case of a bill containing supplemental matter, since the objection to a bill of revivor must be presented by demurrer or plea, and therefore the right merely to revive and continue must be determined solely upon the legal and equitable rights of the parties, as they were presented in that manner.
To hold that the action may be continued on the supplemental complaint mentioned in the 121st section of the Code, without any allowance by the court, seems to us to be doing violence to the plain language of the section ; and to hold that, where the court must be applied to for leave and allowance, it has not the power to refuse, is to convict the framers of the Code of a manifest absurdity. We are therefore of the opinion that the design was to do away with the practice which had prevailed in regard to mere bills of revivor, and substitute in its place the practice of equity in reference to supplemental bills. In support of this construction it is not unworthy of notice that the codifiers adopted the'name- “ supplemental complaint,” which was the precise name by which, in courts of equity, that class of complaints, to file which required the leave of the cqurt, had been known. In determining the true construction of section 121, it is proper to bring into juxtaposition with it another section in pari materia. Section 177 provides that “the plaintiff and defendant, respectively, may be allowed, on motion, to make a supplemental complaint, answer or reply, alleging facts material to the case, occurring afte* the former complaint, answer or reply, or of which the party was ignorant when his former plead *507 ing was made.” Section 121 treats merely of the mode of continuing a suit which has become defective by reason of the death, marriage or other disability of a party, or a transfer of an interest. While section 177 embraces the additional cases which were formerly the subjects of a mere supplemental complaint; and in both instances the pleading is denominated supplemental; and substantially the same language is used in regard to an allowance by the court. Section 177 has received a construction by the Court of Appeals, in a late decision, to which it is probable that the attention of the justice at Special Term who made the order in this case, was not called. In Medbury v. Swan, (46 N. Y. 200,) the Court of Appeals held that the word “may” in section 177, is permissive and not mandatory, and the right to set up new matter by supplemental complaint is not absolute, but is within the discretion of the court. The substance of the opinion, in that case, is contained in the following extract from it. ‘ The right to allege new matter by supplemental pleading is not an absolute right, but is made to depend upon leave of the court in the exercise of a legal discretion. The application may be refused if the new defence, although strictly legal, is not equitable, or if the application is not made with reasonable diligence. * * * Had the legislature intended to confer an absolute right on the party, it would not have required the idle ceremony of an application to the court for leave, but would have permitted the supplemental pleading to have been served of course.”
The language of section 121 is: “ The court on motion, ’ ’ &c., “may allow.” That of section 177 is, “the plaintiffs,” &c., “may be allowed on motion.” We are unable to perceive any shadow of difference between the provisions of these two sections, as to the power of the court, and even if we were not otherwise convinced that the decisions in the first district, which have been referred to, were erroneous, we must hold them to be, in *508 effect, overruled by the Court of Appeals in the case of Medbury v. Swan. We think, therefore, that the Code has placed cases of supplemental revivor, and supplement, and mere revivor, all upon the same footing as to the practice. That to file a supplemental complaint in either case, leave of the court is necessary. The difference between the present and the former practice being that now the objection to the filing of the complaint in cases of mere revivor, as well as in cases where the complaint contains other supplemental matter, are to be heard on a preliminary motion, instead of by the interposition of formal demurrers or pleas. The counsel for the respondent seemed to place considerable reliance for sustaining his position upon the provision with which section 121 commences, viz: “No action shall abate by the death,” &c., of a party. This, as wé view it in connection with the remainder of the section, only shows that on the subject of abatement, the framers of the Code intended to adopt the rule in equity as being more just and convenient than the rule which had prevailed at law. In the cases for the continuance of which section 121 provides, except perhaps that of a transfer of interest, a suit at law would have become absolutely abated and discontinued, and could not be kept on foot by any proceeding known to the common law; and the commencement of a new suit in the name of the new party in interest, was necessary to obtain the relief sought in the first action. Then the labor and expense of the first suit were whoEy lost, and the substantial rights of the parties might be -changed by the expiration during the progress of the first suit of the time within which an action could be brought. A suit in equity, however, when the cause of action survived, never did abate, so but that it was within the power of the court, in a proper case, and upon the application of the proper parties, to revive and continúe it.
Having arrived at the conclusion that the court has *509 the power to deny the revivor and continuation of a suit, on an application to continue the same by supplemental complaint, under section 121, we will proceed to consider the question whether upon the well settled rules of equity, applicable to bills of revivor, the motion should have been denied.
It will be recollected that under the Revised Statutes, in certain cases, a revivor of a suit in chancery might be had upon petition, and without a formal bill of revivor ; and it was held that in such cases the same objections might be shown in opposition to the petition to revive under the statute, which could be raised to a formal bill of revivor by demurrer or plea, (Wash. Ins. Co. v. Slee, 2 Paige 365;) and this seems necessarily to follow from the nature of the change in the practice.
The appellant’s counsel relies upon three objections to the revival and continuance of this suit, viz: 1. Objections to the original bill. 2. Laches in the attempt to revive. 3. The statute of limitations. It is suggested that there was really no sufficient ground for the interference of a court of equity set forth in the original bill; and it is further claimed that the statute of limitations was a bar to the cause of action, if any, which was set forth in the original bill. The objection, at aE events, seems to be well founded in fact. As has been before stated, the only ground upon which the jurisdiction of a court of equity seems to be claimed, upon the facts stated in the biE, is to have the bonds of the parties reformed, if the court shaE be of the opinion that they do not sufficiently or accurately express what is claimed to have been the parol agreement. Whether this constituted a ground for relief in equity, in the absence of any allegation of fraud, accident or mistake, it is not necessary to discuss. If it be a cause of action, it undoubtedly accrued when the bonds were made, in 1835, or at least when Beach & Bush tendered to Reynolds and his associates a reassignment of the bond *510 of Williams & Fuller, which was in January, 1836. The bilkwás filed-’in June, 1848, more than twelve years after tic- caiisé of action appears to have accrued. By the Revised Statutes in force at the time when the bill was filed, such a suit for relief must have been commenced within ten years after the right to it had accrued. But we think that these objections to the maintenance of the original bill are scarcely appropriate to be much discussed on this motion to revive the suit. If valid, they will be available to the defendants by way of defence in the original suit, if the same should be revived and continued.
The remaining two objections are distinctly to the right to revive, and therefore to be considered on the motion for that purpose. The appellant first invokes the well known equitable doctrine in regard to laches. The principles of courts of equity on this subject are well set forth in Angelí on Limitations at the passages to which we have been referred. (Ang. on Lim. § 25 and note, §§ 11, 171. See also, Smith v. Clay, 3 Bro. Ch. Cas. 640, note.) The case of Hercy v. Dinwoodie, (4 Bro. Ch. Cas. 257,) affords an instance of the application of the doctrine of laches to a bill of revivor. (See also, Pendleton v. Fay, 3 Paige 206.)
In Medbury v. Swan, before referred to, (46 N. Y. 200,) the cause of action was at law. The defendant was discharged in bankruptcy, after the commencement of the suit, and in May, 1868. In the latter part of 1869, he applied for permission to interpose a supplemental answer setting up his discharge in bankruptcy. This permission had been denied in the Supreme Court, and Judge Allen, delivering the opinion of the Court of Appeals, said that a delay of fifteen months before any step was taken with a view to setting up the discharge, was “unanswerable.” To this objection of laches the respondent answers that the defendant might have protected himself against it, since the same 121st sec *511 tion of the Code expressly provides that the court, in case of the death, &c., of the plaintiff, ■" ly, upon the application of “any person aggrieved,’'' m its discretion, order that the action be deemed abated, unless continued by the proper parties within a time to be fixed, not less than six months or more than a year. The same power, however, was doubtless exercised by the court of chancery before the Code. (Randall v. Mumford, 18 Vesey, 424. Adamson v. Hall, Turn. & Russ. 258. Sharp v. Hulett, 2 Sim. & Stu. 496. Pells v. Coon, Hopk. Ch. 450. Douglass v. Sherman, 2 Paige, 358, 364. Greene v. Bates, 7 How. Pr. 296.)
The petitioner in this case further puts forward, as an excuse for the extraordinary laches which has prevailed in this case, the alleged fact that the defendants were, or were supposed to be, insolvent during the greater portion of the time, during which this delay has occurred. This of itself, can hardly be received as a valid excuse for this long delay. The maxim of both courts of law and equity is, “interest reipublieoe ut sit finis litium. ’ ’
The policy of the court is against the raking up of stale demands, and mousing in the charnel houses of abandoned claims. The statutes of limitations in analogy to which courts of equity act, contain no exception by which their operation is suspended in cases of insolvency. If, therefore, there were no statute of limitations directly binding upon courts of equity, as was the case in most instances where the objection of laches has been invoked, this case would seem to be one in which the application to revive and continue the suit, under all the circumstances, should be refused on the ground of unreasonable delay. Since courts of equity in this State have been expressly embraced within and bound by positive statutes of limitations, they have been in most instances relieved from the attempt to apply the doctrine of laches, and from the necessity of con *512 sidering the weight of the circumstances alleged in its exercise.
If we are right as to the nature of the cause of action intended to be asserted in the bill of complaint in this action, it is an action for relief falling within the 97th section of the Code, which took effect in July, 1848, and must be commenced within ten years after the cause of action shall have accrued. ' The counsel for the respondent, in his points, claims that the limitation applicable to the action is twenty years. He states no, ground upon which he bases such a claim, and we are - unable to perceive any reason for it. But whether the limitation be ten or twenty years is immaterial, as both periods have expired, not only since the cause of action arose, but since the time when it became necessary to revive the action, and proper parties to revive it were in existence, and in a condition to proceed. Letters testamentary under the will of the original complainant were granted to his executors in May, 1850, more than twenty-two years before this attempt to revive the action.
The statute having once commenced to run was not suspended by the death of the executors, even if the fact were that they had both died before the limitation expired.
The statute having "once commenced to run, is suspended by death only in the cases and to the extent expressly provided by the same or some other statute. Disabilities cannot be tacked to disabilities. If they could be, the statute" might be suspended for a hundred years or more. It remains, therefore, to inquire whether the statute of limitations is applicable to an attempt to revive and continue a suit. There seems to be no reason why it should not be. The same policy upon which statutes of limitations are based, as applicable to other cases, seems to apply, with at least equal force, to a suit which, though in a situation tó be revived, has lain unrevived and abandoned through the period which *513 would have barred its commencement; and we understand the settled law to be that the statute of limitations always was a good plea to a bill of revivor. (Mitf. Eq. Pl. 290. 2 Barb. Ch. Pr. 53. Story's Eq. Pl. § 831. HoLLingshead's case, 1 P. Wms. 742. Perry v. Jenkins, 1 Myl. & Cr. 118.) The statute, therefore, presents a flat bar to the right to revive in this case. This is so, notwithstanding the defendants might, if they had been unwilling to wait for the expiration of the statute, have compelled a revivor or dismissal within a shorter time, and without regard to the question of the solvency of the defendants; for neither of these circumstances are made exceptions to the running of the statute.
[Fourth Department, General Term, at Syracuse,
January 7, 1873.
Mullin, Talcott and E. D. Smith, Justices.]
If the foregoing views are correct, the conclusion follows that the prayer of the petition for leave to revive and continue the suit, should have been denied.
It is further to be observed that if the decisions in Bornsdorff v. Lord, and Roach v. La Farge, (supra), upon which, as we are given to understand, the decision below went, are to be followed, then the motion should also have been denied. For in each of those cases the General Term affirmed the order of the Special Term, denying the motion.
The order appealed from must be reversed, and motion denied as to the appellant Reynolds, who alone appeals, with $10 costs of appeal to be paid by the petitioner, (a)

 Affirmed by the Court of Appeals, May Term, 1873.