DECIDED IN THE

# COURT OF APPEALS

OF THE

## STATE OF NEW YORK,

COMMENCING MAY 13TH, 1873.

---

EBENEZER S. BEACH, Appellant, *v.* ABELARD REYNOLDS et al.,
Respondents.

The right of the representatives of a deceased party to continue an action
   pending at the time of his death is not absolute, but rests in the legal
   discretion of the court to which application is made under section 121
   of the Code for leave to continue.
In such cases the equitable rule which requires reasonable diligence as
   well as good faith prevails, and a long delay in making the application
   constitutes *laches* and a valid reason for denying the application.
Proceedings to revive and continue actions are within the purview of the
   statute of limitations, and are barred by lapse of time.
Whether an order denying an application to revive and continue an
   action is appealable to this court, *quere.*
*Bornsdorff* v. *Lord*, 41 Barb., 211; S. C., 17 Abb., 169; and *Roach* v. *La
   Farge*, 43 Barb., 616; S. C., 19 Abb., 67, limited. See opinion of TAL-
   COTT, J., note.

(Argued May 6, 1873; decided May 13, 1873.)

APPEAL from order of the General Term of the Supreme
Court in the fourth judicial department, reversing an order
of Special Term directing this action to be revived and con-
tinued upon supplemental complaint in the name of Henry
   SICKELS—VOL. VIII.    1

Statement of case.

B. Hewitt, administrator, with the will annexed, of plaintiff, deceased. (Reported below, 64 Barb., 506.)

This was a suit in equity commenced before the Code, to wit, June 28, 1848.

The action was founded upon certain contracts and bonds between the parties, plaintiff asking to reform the bonds in case they should be considered by the court unintelligible, or not to express the real terms of the prior agreements. Answers were served, but no further steps appear to have been taken in the cause until the motion on which this appeal arises was made, which was in July, 1872. Ebenezer S. Beach, the complainant, died in March, 1850, leaving a will. The will was admitted to probate and letters testamentary were issued in May, 1850. The executors made no attempt to revive or continue the action. One died six years, the other ten years after the issue of the letters testamentary. Henry B. Hewitt was appointed administrator, with the will annexed, in June, 1872.

The Special Term in the order granting the motion stated that the case was a proper one for denying the motion if the court had any such discretion, and that it was granted on the ground that the court had no discretion.

*George E. Ripsom* for the appellant. Defendants might have expedited the suit, and cannot complain of the delay. (2 R. S., 185, §§ 118, 119; 1 Barb. Ch. Pr., 244; *Hoffman* v. *Treadwell*, 6 Paige, 309; *Harrington* v. *Becker*, 2 Barb. Ch. R., 76, 77; *Greene* v. *Bates*, 7 How., 296, 297; *Palmer* v. *Murray*, 18 id., 145; *Williamson* v. *Moore*, 5 Sand., 647.) An action upon the death of a party is still in court. (*Diefendorf* v. *House*, 9 How., 243; *Rogers* v. *Adriance*, 22 id., 97; *Fayerweather* v. *Smith*, 3 id., 98; *Hackett* v. *Belden*, 10 Abb. [N. S.], 123; *Taylor* v. *Taylor*, 43 N. Y., 585, 586; *Moore* v. *Hamilton*, 44 id., 672.) The cause of action having survived, the action continued in life. (*McGregor* v. *McGregor*, 35 N. Y., 220; *Potter* v. *Van Vranken*, 36 id., 619, 623, 625; *Emerson* v. *Bleakley*, 5 Abb. [N. S.], 350.) The Code

applies to suits pending July 1, 1848. (*Waldorph* v. *Bartle*, 4 How., 358; *Vrooman* v. *Jones*, 5 id., 369; *Ridgeway* v. *Buckley*, 7 id., 269; *Green* v. *Bates*, 7 id., 296; *Spier* v. *Robinson*, 9 id., 331; *St. John* v. *Croel*, 10 id., 257.) The right to continue the suit is absolute, and the court had no discretion to refuse it. (*St. John* v. *West*, 4 How., 329, 333; *Van Epps* v. *Horspool* [not reported], G. T., 1863; 1 Hoff. Ch. Pr., 403; 2 Barb. Ch. Pr., 64, 66, 82; *Pendleton* v. *Fay*, 3 Paige, 204; *Allen* v. *Walter*, 10 Abb. Pr., 379; *Roach* v. *La Farge*, 43 Barb., 616; *Bornsdorff* v. *Lord* 41 id., 211; *Coon* v. *Knapp*, 13 How., 177.)

*H. R. Selden* for the respondents. The statute of limitations is a bar to the right to revive this suit. (Mitford's Pldgs., 290; 2 Barb. Ch. Pr., 53; *Hillingshead's Case*, 1 P. Wms., 742; *Perry* v. *Jenkins*, 6 Myl. & Cr. [13 Eng. Ch.], 118; Welford's Eq. Pldgs., 218; *Bruce* v. *Tilson*, 25 N. Y., 194; *Roberts* v. *Sykes*, 30 Barb., 178; 2 R. S., 301, § 52; Code, §§ 73, 97.) The delay constitutes a bar in equity. (Angel on Lim., 5th ed., § 25, note; 2 id., §§ 11, 171; *Hercy* v. *Dinwood*, 4 Br. Ch. Cas., 257; Perkins' Notes, 257; note *l*, 269; note *b*,      ; *Ferson* v. *Sanger*, Davies' R. [U. S. C. C. R.], 252, 263–265; *Pendleton* v. *Fay*, 3 Paige, 206, 207; *Smith* v. *Clay*, 3 Br. Ch. Cas., 640, note; *McKnight* v. *Taylor*, 1 How. U. S., 161; Code, § 90.) Whether the court will allow a revivor is a matter of discretion. (Code, § 121; *Medbury* v. *Swan*, 46 N. Y., 200; *Egremont* v. *Hamilton*, 1 Ball & Beattie, 513; *Hercy* v. *Dinwood*, 4 Br. Ch. Cas., 269, note *b* [Perkins' ed.], and cases cited.) The refusal of the judge to exercise this discretion was error. (*Russell* v. *Conn.*, 20 N. Y., 81; *Mercer* v. *Sayre*, 7 J. R., 306; 2 J. Cas. [Shep. ed.], 321, note *b*.)

ALLEN, J. The Supreme Court in passing upon the case affirms and very satisfactorily establishes the following propositions:

1. That the right of the representatives of a deceased party to continue an action pending at his death, is not

an absolute legal right, but rests in the legal discretion of the court to which the application is made under section 121 of the Code, and that leave to continue the action may be granted or refused according to the particular circumstances of each case.

2. That a long delay in making the application, unexcused, constitutes laches, and a valid reason for refusing the leave asked ; that in such cases the equitable rule which requires reasonable diligence as well as good faith to put the court in motion prevails, and that the court will not aid a party who has slept upon his rights in the enforcement of stale demands.

3. That so far as disclosed by the record and the papers before the court, the cause of action of the plaintiff as a demand in equity was barred by the statute of limitations before the commencement of the original action, having been perfect in 1835 and the bill in equity filed in 1848 ; and,

4. That the proceeding to revive and continue the action is barred by lapse of time. The last proceeding in the action was in December, 1848; the plaintiff died in March, 1850, and letters testamentary were issued to his executors in May of the same year, more than twenty-two years before this application. The surviving executor of the plaintiff died in 1860, ten years after his appointment, and twelve years before the petitioner sought the appointment of administrator *de bonis non* with the will annexed, and set about to galvanize into life this old claim. It is questionable whether this order, involving as it did a question of discretion, is appealable to this court; but as the same practical result will follow an affirmance of the order, as upon the dismissal of appeal, that question will not be considered.

The order of the General Term was clearly right and must be affirmed for the reasons assigned by Judge TALCOTT.*

All concur.

Order affirmed.

NOTE.—The following is the opinion of TALCOTT, J., at General Term, omitting therefrom the statement of facts.—REP.:

Opinion of TALCOTT, J., below.

TALCOTT, J.    *    *    *    *    The first question which presents
itself on this appeal is, whether the justice at the Special Term was correct
in the position that the petitioner had an absolute right to revive and con-
tinue the suit so that the court could not legally deny his motion for that
purpose.

The proposed supplemental complaint accompanying the petition in this
case is what, under the former, practice of the Court of Chancery, would
have been a mere bill of revivor. It is founded simply on the death of
the original plaintiff, and the succession to his rights claimed by the peti-
tioner, Hewitt, as administrator *de bonis non* with the will annexed; and
this death and succession of interest is the only matter which has happened
since the filing of the bill which the party claiming to have succeeded to
the rights of the original complainant seeks to bring before the court.
Such a bill, that is, a simple bill of revivor, might have been filed under
the former practice without leave of the court. (Mitford's Eq. Pl., 69; 2
Barb. Ch. Practice, 33; 3 Paige, 206.)    What was known under the
former practice as a supplemental bill was a bill designed to bring
before the court facts which had occurred, or at least been discov-
ered since the filing of the original bill and affecting the rights of the
parties, or the subject of the controversy, or to add parties, or to
remedy a defect in the prayer of the original bill. (Hoff. Ch. Pr., 393.)
A supplemental bill could not be filed without leave of the court. Some-
times a bill was filed partaking of the character of both a mere bill
of revivor and a supplemental bill, which was called a bill of revivor and
supplement; and in this case, also, leave of the court was necessary before
the bill could be filed. A bill of revivor was filed, of course, and without
leave, but its effect was not, of itself, to revive the suit. The prayer of
the bill of revivor was that the suit be revived, and this relief was denied
or granted by the court upon the hearing on the bill of revivor. To the
bill of revivor the defendant might interpose a demurrer revivor or plea
founded upon objections to the bill of revivor itself. So that, in fact, the
bill of revivor was nothing more, in effect, than a mere formal petition for
leave to revive and continue the suit, to which the defendant might object
in the more formal manner of demurrer or plea, instead of by affidavit
merely. A consideration of this feature of the former practice throws some
light upon the proper construction of the 121st section of the Code. The
section is, in substance, as follows: "No action shall abate by the death,"
etc., " of a party," etc., "if the cause of action survive or continue." "In
case of death," etc., "of a party, the court, on motion at any time
within one year thereafter, or afterwards on a supplemental complaint,
*may allow* the action to be continued by or against his representative or
successor in interest." As originally adopted the section only provided for
the continuance by motion, to be made within a year. The words, "or
afterwards on a supplemental complaint," were added in 1849. Under
this section the General Term of the first district, in *Bornsdorff* v.

*Lord* (41 Barb., 211; S. C., 17 Abb., 169), and afterwards in *Roach* v. *La Farge* (43 Barb., 616; S. C., 19 Abb., 67), held, that no motion for leave to file a supplemental complaint, after the expiration of the year, was necessary, but that it could be filed, of course; and they therefore, in each case upon this ground, affirmed the order denying the motion for leave to file a supplemental complaint. In each of those cases the prevailing opinion was written by Justice BARNARD and concurred in by Justice SUTHERLAND only. In the first case JUSTICE CLERKE, and in the second Justice LEONARD, dissented, each delivering an opinion in opposition to the doctrine maintained by the then majority. So that, in fact, the dissenting opinions at the General Term of the first district on this point are numerically equal to those which maintain the point decided in those cases. Mr. Justice LEONARD dissented in *Roach* v. *La Farge* upon the ground that the Code had introduced the former practice in regard to supplemental bills. The case of *Allen* v. *Walter*, in the New York Common Pleas (10 Abb., 379), which was also cited by the respondents as an authority for the position, that no motion for leave to file a supplemental bill was necessary, holds, as we understand it, the contrary doctrine. Mr. Justice BRADY, in an elaborate opinion delivered in that case, maintains the view that the section 121 of the Code was designed to embody the practice in equity, and abolish bills of revivor, and revivor and supplement, in all cases to which its provisions apply, and adopt the practice on supplemental bills, and in this case the court affirmed the order, giving leave to file the supplemental complaint as a proper exercise of the discretion of the court. (See also the case of *Greene* v. *Bates*, 7 How. Pr., 296.) This seems to us entirely clear, from the language of the section itself, taken in connection with the rules of practice in equity, which had previously existed, and with which the framers of the Code were entirely familiar. The distinction which had formerly existed between a supplemental bill and a bill of revivor and supplement, and a bill of revivor pure and simple, seems to have been without much foundation in reason, since in each case the leave and decision of the court was necessary to the attainment of the object. Though the question on a bill of revivor pure and simple was less a matter of discretion than in the case of a bill containing supplemental matter, since the objection to a bill of revivor must be presented by demurrer or plea, and therefore the right merely to revive and continue must be determined solely upon the legal and equitable rights of the parties as they were presented in that manner. To hold that the action may be continued on the supplemental complaint mentioned in the 121st section of the Code, without any allowance by the court, seems to us to be doing violence to the plain language of the section, and to hold that, where the court must be applied to for leave and allowance, it has not the power to refuse, is to convict the framers of the Code of a manifest absurdity. We are, therefore, of the opinion that the design was to do away with the practice which had prevailed in regard to mere bills of revivor, and substitute in its place the practice of equity in reference to

supplemental bills. In support of this construction it is not unworthy of notice that the codifiers adopted the name "supplemental complaint," which was the precise name by which in courts of equity that class of complaints, to file which required the leave of the court, had been known. In determining the true construction of section 121 it is proper to bring it into *juxta position* with another section in *pari materia*. Section 177 provides that "the plaintiff and defendant, respectively, may be allowed, on motion, to make a supplemental complaint, answer or reply, alleging facts material to the case occurring after the *former* complaint, answer or reply, or of which the party was ignorant when his former pleading was made." Section 121 treats merely of the mode of continuing a suit which has become defective by reason of the death, marriage or other disability of a party, or a transfer of an interest. While section 177 embraces the additional cases which were formerly the subjects of a mere supplemental complaint, and in both instances the pleadings denominated supplemental, and substantially the same language is used in regard to an allowance by the court. Section 177 has received a construction by the Court of Appeals in a late decision, to which it is probable that the attention of the justice at Special Term who made the order in this case was not called.

In *Medbury* v. *Swan* (46 N. Y., 200) the Court of Appeals held, that the word *may*, in section 177, is permissive and not mandatory, and the right to set up new matter by supplemental complaint is not absolute, but is within the discretion of the court. The substance of the opinion in that case is contained in the following extract from it: "The right to allege new matter by supplemental pleading is not an absolute right, but is made to depend upon leave of the court in the exercise of a legal discretion; the application may be refused if the new defence, although strictly legal, is not equitable, or if the application is not made with reasonable diligence. * * * Had the legislature intended to confer an absolute right on the party it would not have required the idle ceremony of an application to the court for leave, but would have permitted the supplemental pleading to have been served, of course."

The language of section 121 is, "the court on motion," etc., "*may allow.*"—That of section 177, is "the plaintiff," etc., "*may be allowed on motion ;*" we are unable to perceive any shadow of difference between the provisions of these two sections as to the power of the court, and even if we were not otherwise convinced that the decisions in the first district, which have been referred to, were erroneous, we must hold them to be in effect overruled by the Court of Appeals in the case of *Medbury* v. *Swan.* We think, therefore, that the Code has placed cases of supplement, revivor and supplement and mere revivor, all upon the same footing as to the practice. That to file a supplemental complaint in either case, leave of the court is necessary. The difference between the present and the former practice being, that now the objections to the filing of the complaint in cases of mere revivor as well as in cases where the complaint contains

other supplemental matter, are to be heard on a preliminary motion instead of by the interposition of formal demurrers or pleas.

The counsel for the respondents seemed to place considerable reliance for sustaining his position upon the provision with which section 121 commences, viz.: " No action shall abate by the death," etc., of a party. This, as we view it in connection with the remainder of the section, only shows that on the subject of abatement the framers of the Code intended to adopt the rule in equity as being more just and convenient than the rule which had prevailed at law. In the cases for the continuance of which section 121 provides, except, perhaps, that of a transfer of interest, a suit at law would have become absolutely abated and discontinued, and could not be kept on foot by any proceeding known to the common law, and the commencement of a new suit in the name of the new party in interest, was necessary to obtain the relief sought in the first action ; thus the labor and expense of the first suit were wholly lost, and the substantial rights of the parties might be changed by the expiration, during the progress of the first suit, of the time within which an action could be brought. A suit in equity, however, where the cause of action survived, never did abate so but that it was within the power of the court, in a proper case, and upon the application of the proper parties, to revive and continue it.

Having arrived at the conclusion that the court has the power to deny the revivor and continuation of a suit on an application to continue the same by supplemental complaint, under section 121, we will proceed to consider the question whether, upon the well settled rules of equity applicable to bills of revivor, the motion should have been denied.

It will be recollected that under the Revised Statutes in certain cases a revivor of a suit in chancery might be had upon petition and without a formal bill of revivor, and it was held that in such cases the same objections might be shown in opposition to the petition to revive under the statute, which could be raised to a formal bill of revivor by demurrer or plea (*Wash. Ins. Co.* v. *Slee*, 2 Paige, 365), and this seems necessarily to follow from the nature of the change in the practice. The appellant's counsel relies upon three objections to the revival and continuance of this suit, viz. : 1st. Objections to the original bill. 2d. Laches in the attempt to revive. 3d. The statue of limitations.

It is suggested that there was really no sufficient ground for the interference of a court of equity set forth in the original bill. And it is further claimed that the statute of limitations was a bar to the cause of action, if any, which was set forth in the original bill. The objection, at all events, seems to be well founded in fact. As has been before stated, the only ground upon which the jurisdiction of a court of equity seems to be claimed, upon the facts stated in the bill, is to have the bonds of the parties reformed if the court shall be of the opinion that they do not sufficiently or accurately express what is claimed to have been the parol agreement; whether this constitutes a ground for relief in equity in the absence of any allega-

Opinion of TALCOTT, J., below.

tion of fraud, accident or mistake, it is not necessary to discuss. If it be a cause of action it undoubtedly accrued when the bonds were made in 1835, or at least when Beach and Bush tendered to Reynolds and his associates a reassignment of the bond of Williams and Fuller, which was in January, 1836. The bill was filed in June, 1848, more than twelve years after the cause of action appears to have accrued. By the Revised Statutes, in force at the time when the bill was filed, such a suit for relief must have been commenced within ten years after the right to it had accrued. But we think that these objections to the maintenance of the original bill are scarcely appropriate to be much discussed on this motion to revive the suit. If valid they will be available to the defendants by way of defence in the original suit, if the same should be revived and continued.

The remaining two objections are distinctly to the right to revive, and therefore to be considered on the motion for that purpose.

The appellant first invokes the well known equitable doctrine in regard to laches. The principles of courts of equity on this subject are well set forth in Angel on Limitations, at the passages to which we have been referred. (Angel on Lim., § 25, and note, §§ 11, 171; see also *Smith* v. *Clay*, 3 Bro. Ch. Cas., 639, note.) The case of *Hercy* v. *Dinwoodie* (4 Bro. Ch. Cas., 257) affords an instance of the application of the doctrine of laches to a bill of revivor. (See also *Pendleton* v. *Fay*, 3 Paige, 206.) In *Medbury* v. *Swan*, before referred to (46 N. Y., 200), the cause of action was at law, the defendant was discharged in bankruptcy after the commencement of the suit in May, 1868. In the latter part of 1869 he applied for permission to interpose a supplemental answer setting up his discharge in bankruptcy. This permission had been denied in the Supreme Court, and Judge ALLEN delivering the opinion of the Court of Appeals said that a delay of fifteen months before any step was taken with a view to setting up the discharge was "unanswerable."

To this objection of laches the respondent answers that the defendant might have protected himself against it. Since the same 121st section of the Code expressly provides that the court, in case of the death, etc., of the plaintiff, may, upon the application of " any person aggrieved," in its discretion, order that the action be deemed abated, unless continued by the proper parties, within a time to be fixed, not less than six months or more than a year. The same power, however, was doubtless exercised by the Court of Chancery before the Code. (*Randall* v. *Mumford*, 18 Vesey, 424; *Adamson* v. *Hall*, Turner & Russ, 258; *Sharp* v. *Hullett*, 2 Sim. & Stu., 496; *Pells* v. *Coon*, Hopk. Ch. R., 450; *Douglass* v. *Sherman*, 2 Paige, 358–364; *Greene* v. *Bates*, 7 How. Pr., 296.) The petition in this case further puts forward as an excuse for the extraordinary laches which have prevailed in this case the alleged fact that the defendants were, or were supposed to be, insolvent during the greater portion of the time during which this delay has occurred. This itself can hardly be received as a valid excuse for this long delay. The maxim of both courts of law and equity is " *interest Reipublicæ ut sit finis litem.*" The policy of the court is against the raking

up of stale demands and mousing in the charnel-houses of abandoned claims. The statutes of limitations, in analogy to which courts of equity act, contain no exception by which their operation is suspended in cases of insolvency. If, therefore, there was no statute of limitations directly binding upon courts of equity, as was the case in most instances where objection of laches has been invoked, this case would seem to be one in which the application to revive and continue the suit, under all the circumstances, should be refused on the ground of unreasonable delay.

Since courts of equity in this State have been expressly embraced within and bound by positive statutes of limitation, they have been in most instances relieved from the attempt to apply the doctrine of laches and from the necessity of considering the weight of the circumstances alleged in its excuse. If we are right as to the nature of the cause of action intended to be asserted in the bill of complaint in this action, it is an action for relief falling within the ninety-seventh section of the Code (which took effect in July, 1848), and must be commenced within ten years after the cause of action shall have accrued. The counsel for the respondents, in his points, claims that the limitation applicable to the action is twenty years. He states no ground upon which he bases such a claim, and we are unable to perceive any reason for it. But whether the limitation be ten or twenty years is immaterial, as both periods have expired, not only since the cause of action arose, but since the time when it became necessary to revive the action, and the proper parties to revive it were in existence and in a condition to proceed. Letters testamentary under the will of the original complainant were granted to his executors in May, 1850, more than twenty-two years before this attempt to revive the action. The statute having once commenced to run, was not suspended by the death of the executors, even if the fact were that they had both died before the limitation expired. The statute having once commenced to run, is suspended by death only in the cases and to the extent expressly provided by the same or some other statute; disabilities cannot be tacked to disabilities. If they could be, the statute might be suspended for a hundred years or more. It remains, therefore, to inquire whether the statute of limitations is applicable to an attempt to revive and continue a suit. There seems to be no reason why it should not be. The same policy upon which statutes of limitations are based as applicable to other cases seems to apply with at least equal force to a suit which, though in a situation to be revived, has lain unrevived and abandoned through the period which would have barred its commencement, and we understand the settled law to be that the statute of limitations always was a good plea to a bill of revivor. (Mitford's Eq. Pl., 290; 2 Barb. Ch. Pr., 53; Story's Eq. Pl., § 831; *Hollingshead's Case*, 1 P. Wms., 742; *Perry* v. *Jenkins*, 1 Mylne & Craig, 118.) The statute, therefore, presented a flat bar to the right to revive in this case. This is so, notwithstanding the defendants might, if they had been willing to wait for the expiration of the statute, have compelled a revivor or dismissal within a shorter time, and without regard to

the question of the solvency of the defendants, for neither of these circumstances are made exceptions to the running of the statute.

If the foregoing views are correct, the conclusion follows, that the prayer of the petitioner for leave to revive and continue the suit should have been denied.

It is further to be observed, that if the decisions in *Bornsdorff* v. *Lord* and *Roach* v. *La Farge* (*supra*), upon which, as we are given to understand, the decision below went, are to be followed, then the motion should also have been denied, for in each of these cases the General Term affirmed the order of the Special Term denying the motion.

The order appealed from must be reversed and the motion denied as to the appellant Reynolds, who alone appeals, with ten dollars costs of appeal, to be paid by the petitioner.