Cavanaugh vs. Scott.

— REP.

CAVANAUGH, Appellant, vs. SCOTT, Respondent.

*December 10, 1892 — January 10, 1893.*

| 84 | 93 |
| 86 | 328 |
| 84 | 93 |
| 92 | 616 |

*Death of party: Continuance of action against personal representatives:
Laches: Discretion.*

1. Under sec. 2803, R. S., providing that in case of the death of a party, if the cause of action survives or continues, the court, on motion, etc., *may* allow or compel the action to be continued by or against his personal representatives, leave to continue the action may be granted or refused, according to the particular circumstances of each case.

2. An unexplained and unexcused neglect to proceed for an unreasonable period, during or by which the other party has lost his means of defense, so that his rights in respect thereto will be put in peril, is a sufficient ground for denying an application to continue or revive an action against his personal representatives.

3. Such laches may consist of long delay and gross neglect to proceed in the action, occurring before the death of the party as well as after; but mere lapse of time which the court can see will not operate prejudicially to the opposite party, and not amounting to a statutory bar, will not afford ground for the denial of such application.

APPEAL from the Circuit Court for *Winnebago* County. This action was commenced March 6, 1872, to recover against the defendant the sum of $21,383.41, alleged to be

due from him to the plaintiff for work and labor done and
materials furnished in grading and constructing a portion
of the roadbed of the Wisconsin Central Railroad Company,
under a written contract between the plaintiff and one
Royal Hill and the defendant, it being alleged that Hill
had sold out his interest in the contract to the plaintiff.
Issues of fact were joined, and the action was referred to
a referee, to hear, try, and determine the same, December 6,
1872.  The trial was commenced April 7, 1873, and the
plaintiff introduced considerable evidence, and rested, and
the defendant and Hill appear to have testified, when the
plaintiff's counsel, concluding that the latter was a neces-
sary party defendant, took leave to amend by making him
a party, and the trial was adjourned until June 23d.  On
the 3d of May one of the plaintiff's attorneys wrote him,
inquiring why he did not pay the costs for leave to amend,
and saying, " This must be attended to soon or the case is
gone up; " and on the 20th of the same month he wrote
plaintiff again on the same subject, stating the amount to
be $15.84, that he had no reply to his letters, and asking,
" What is the matter?  Do you intend to abandon the case?
If so, inform me at once, and let me be discharged.  If you
are going on, let us put in our best, and make the most of
it.  Write me at once what you intend doing."  On the
23d of June the plaintiff did not attend, but his attorney
did, and the case was put off for two weeks.  One or more
other postponements took place, and September 7th was
fixed on for further hearing, and on this day the plaintiff
claims he was present, with fifteen witnesses, for the pur-
pose of offering his rebutting evidence, the defendant not
having concluded his defense; that neither the defendant
nor his attorneys appeared; that the referee said to the
plaintiff that " they ought to be here; get your attorneys, and
make out your case, and I will close it up; " that he went
to see one of his attorneys, and he said he was sick and un-

able to take up the case on that day; that he sought the other, and he told him, after some preliminary conversation: "*Cavanaugh*, you go home and be content. This case will not be tried to-day, nor in six months from to-day, nor in six years;" that he informed the referee of the result, and he said: "Well, the time is past, and none of them have been near me. Something must be wrong." There is nothing to show that the case was continued to any definite time thereafter, or that any further proceedings were taken in it, or whether Hill was ever made a party defendant. On the 28th of April, 1875, the office of the referee was accidentally destroyed by fire, with all the papers and testimony and exhibits in the case.

On the 30th of April, 1884, one of the plaintiff's attorneys sued the plaintiff for his services in the case, and he pleaded the statute of limitations to the demand, but without success.

The defendant died July 5, 1890, intestate, and Libbie A. Scott, his widow, was appointed administratrix of his estate, October 3d of the same year. On the 4th of September, 1891, the plaintiff filed his petition and supplemental complaint to revive the action and have it continued against her in her representative capacity; and notice was given her to show cause, etc., within twenty days after service; and, she having failed to appear and show cause, an order was made October 1, 1891, reviving the action; but this order was vacated, on stipulation, and the matter was set for hearing at the next December term. At the hearing, the administratrix showed cause, objecting that the plaintiff, by reason of his failure to prosecute the suit or take any proceedings therein for about eighteen years, was not entitled to have it revived; that it was against equity and good conscience to allow the action to be revived, the defendant Scott being dead, and his books and papers destroyed by fire; that to revive the action would

greatly endanger the estate, and allow the plaintiff to take advantage of his laches in not prosecuting the action; that soon after the fire, and in Scott's lifetime, the papers and accounts might have been restored, or their contents proved; and that, owing to lapse of time and the death of Scott, this had now become impossible.

The plaintiff objected to the hearing and filing of affidavits or reasons against the revival of the action, because they were not filed within twenty days after the service of the petition, as required by sec. 2813, R. S.; that the action had already been, and then stood, revived against the administratrix, and she had by her laches lost her right to object thereto. An affidavit of the attorney for the administratrix was filed, excusing her negligence, and affidavits were filed to the effect, among other things, that at the hearing before the referee the defendant produced pay rolls and vouchers which showed *prima facie* that he had overpaid the plaintiff on the contract by about $5,000; that it was not disputed but that the defendant paid the laborers who did the work under the contract, but the dispute was wholly as to the amount paid; that since defendant's death there is no one by whom the contents of the papers destroyed in the fire can be proved; that the laborers came from many localities, and were of migratory habits, so that most of them cannot now be found.

Many affidavits were filed on both sides, on the question of laches, and tending to show that the plaintiff endeavored many years ago to get the papers left together, and had talked and consulted with various attorneys about getting ready and going on with the case; that he was worth in property not exempt over $5,000, and claimed a large sum was due him on the claim against the defendant; and others were read, opposing, tending to show that the plaintiff had been guilty of gross negligence in not prosecuting his suit; but there was no claim that anything had been

Cavanaugh vs. Scott.

done in the action from September, 1873, until the petition to revive was filed, September 4, 1891. The court denied the application to revive and continue the action against the administratrix, and from the order of denial the plaintiff appealed.

For the appellant there was a brief by *G. T. Moeskes* and *John W. Hume*, attorneys, and *Humphrey Pierce*, of counsel, and oral argument by *Mr. Pierce*.

*Gabe Bouck*, for the respondent.

PINNEY, J. At common law, when a sole plaintiff or sole defendant in a personal action died, the action abated and could not be revived, but all such personal actions as were founded upon any obligation, contract, covenant, debt, or duty to be performed, survived, and did not die with the person, but a new action might be brought by or against the personal representatives of the deceased plaintiff or defendant. 2 Archb. Pr. 876; *Hambly v. Trott*, 1 Cowp. 372, 373; *Holsman v. St. John*, 90 N. Y. 461, 462. Under the rule of the common law, this action would have abated by the death of the defendant Scott, and although his liability on the contract or indebtedness, if any, survived against his personal representative, to the extent she received assets, yet all claim against her in such new action would probably have been barred by the statute of limitations. The statute changed the common-law rule by providing that "an action does not abate by the occurrence of any event, if the cause of action survives or continues;" and, "in case of the death or other disability of a party, . . . the court, on motion, at any time within one year thereafter, or afterwards, on a supplemental complaint, *may* allow or compel the action to be continued by or against his personal representatives or successor in interest." R. S. secs. 2800, 2803. The action, therefore, while it did not abate by the death of the defendant, Scott, became defect-

ive for want of proper parties, so that it could not be continued against his personal representatives without the consent of the court; and this consent the court, for equitable reasons and in the exercise of a sound legal discretion, may withhold. The language of the statute is permissive, and not obligatory, and leave to continue the action may be granted or refused, according to the particular circumstances of each case. This view was adopted by the Court of Appeals in *Beach v. Reynolds*, 53 N. Y. 1, 64 Barb. 506, under statutory provisions the same as our own. In *Evans v. Cleveland*, 72 N. Y. 486, a distinction was taken between legal and equitable actions in this respect; and it was there held that no mere lapse of time would absolutely defeat an application for the continuance of a legal action in the name of the representative of a deceased party, whatever the rule might be in an equitable action. After the Code had been amended in New York so as to provide that "the court *must*, upon a motion, allow or compel the action to be continued," etc., omitting the provision for a supplemental complaint, it was held in *Coit v. Campbell*, 82 N. Y. 509, that the discretion which the court previously had, either to grant leave on motion or to put the party to his supplemental complaint, was taken away, and required that the relief in all cases should be by motion, making it a substitute for the supplemental complaint; that the amendment did not require the granting of the motion in all cases, and the right to the relief asked is to be determined according to the settled rules of equity. But in *Holsman v. St. John*, 90 N. Y. 461, it was held that it was obligatory on the court, under this amendment, to grant the motion upon proper affidavits showing the necessary facts, and that no mere lapse of time could defeat the application. In *Lyon v. Park*, 111 N. Y. 350, the subject was carefully examined, and it was there declared that "it had never been held in that court that an unexplained or inexcusable neglect to

proceed for a long period, during which the other party has lost his means of defense, may not be a sufficient ground for denying a continuance" of the action; and it was there held that, "as an application to the court is necessary to authorize its revival or continuance, the court may, on the ground of inexcusable *laches*, or *where irreparable injury* will be suffered, deny the application. Legal rights are frequently lost by laches, where no question of the statute of limitations is involved; and the right to a continuance of an action on the death of a party, where the cause of action survives, is not of so absolute a character as to preclude the court, in the exercise of a legal discretion, having a regard to all the circumstances, from denying a continuance of the action."

We think, in view of the condition of the law before the statute, and its manifestly discretionary terms, the case of *Lyon v. Park*, 111 N. Y. 350, is a wise and correct exposition of the law; and that an application to revive and continue an action must be decided upon all the facts and circumstances of the case, whether occurring before or after the death of the party, with a view to the ends of substantial justice; and that a party may not, by paying no attention to the prosecution of his action, wait until the opposite party and his witnesses are dead, and the instruments and means of proof to contest his claim are destroyed, and then ask the court to permit him to revive and prosecute his action, and to reap the fruits of such an unconscientious and inequitable course of proceeding. In this case, as in *Lyon v. Park, supra*, it was urged that the opposite party had been guilty of laches, and might have forced the case to a trial in his lifetime; but, as said in that case, "the primary duty to move to continue the action was on the plaintiff." Besides, he must maintain his right to continue the action by excusing *his* laches, and by proof on *his part* of good faith and diligence in the prosecution of his action,

Cavanaugh vs. Scott.

and the laches of the defendant does not serve to excuse or justify his gross and utterly inexcusable delay. The plaintiff had it in his power to proceed at any time, and to have compelled a determination of the controversy, when the means of doing approximate justice, at least, were within the control of both parties. The law discourages and looks with disfavor on *laches*, and encourages diligence and good faith. The rule recognized in *Lyon v. Park, supra,* is sustained by subsequent cases. *In re Palmer,* 115 N. Y. 493; *Duffy v. Duffy,* 117 N. Y. 647. The point under consideration was not considered or decided in the case of *Plumer v. McDonald L. Co.* 74 Wis. 137. We hold, therefore, that an unexplained and unexcused neglect to proceed for an unreasonable period, during or by which the other party has lost his means of defense, so that his rights in respect thereto will be put in peril, is a sufficient ground for denying an application to continue or revive an action against the personal representatives of a deceased party; that such laches may consist of long delay and gross neglect to proceed in the action, occurring before the death of the party, as well as after; though *mere* lapse of time, however, which the court can see will not operate prejudicially to the opposite party, and not amounting to a statutory bar, will not afford ground for the denial of such an application.

It is plain that the right of defense of the personal representative of the deceased defendant will be greatly endangered, if not wholly lost, should the action be now revived and continued. The defendant was a material witness, without whose testimony it is probable his defense cannot be made out. The papers, pay rolls, and vouchers put in evidence before the referee have been destroyed, and witnesses have become widely scattered, or have died, and the dust of time and forgetfulness has settled over the transaction in question, and the plaintiff, through his gross and inexcusable neglect, has lost all right to agitate his

claims in court again. For a period of nearly eighteen years he did not take a single step in the cause, and the conduct of the plaintiff is open to the imputation of having waited for the death of his adversary and the loss of his proofs, that he might thus be enabled to prevail against his personal representative. We think it would be a perversion of the discretionary power vested in the court by statute to permit such an inequitable result. The circuit court rightly denied the plaintiff's application.

*By the Court.*— The order of the circuit court is affirmed.